**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

MARK DOUGLAS,                          )
      Plaintiff,                          )
                        )
      v.                                   )     CAUSE NO.: 2:10-CV-391-PRC
                        )
CITY OF LAKE STATION,                  )
      Defendant.                          )

**OPINION AND ORDER**

This matter is before the Court on a Motion of Defendants[sic] for Summary Judgment [DE 28], filed by Defendant City of Lake Station on January 13, 2012.[1] Plaintiff has not filed a response, and the time to do so has passed.

**PROCEDURAL BACKGROUND**

On October 4, 2010, Plaintiff Mark Douglas filed a Complaint against Defendants City of Lake Station, Lake Station Board of Public Works, and Lake Station Emergency Medical Department a/k/a EMS Department, alleging discrimination on the basis of race for his unlawful discharge in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended by the Civil Rights Act of 1991 ("Title VII").

On November 29, 2010, Defendant City of Lake Station ("City") filed an answer. That same day, Defendants Lake Station Board of Public Works and Lake Station Emergency Medical Department filed a Motion to Dismiss. On March 2, 2011, United States District Court Judge

---

[1] Although the Motion provides that it is brought by all three original named Defendants, this case remains pending only against Defendant City of Lake Station. Defendants Lake Station Board of Public Works and Lake Station Emergency Medical Department a/k/a EMS Department were dismissed without prejudice on March 2, 2011. Neither Defendant has been reinstated in this case (as suggested might be possible by United States District Court Judge William C. Lee in the dismissal Order). Therefore, this motion is brought solely by Defendant City of Lake Station.

William C. Lee granted the Motion to Dismiss without prejudice.

The remaining parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case; therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g). As a result, on March 17, 2011, the case was reassigned to the undersigned Magistrate Judge.

On January 13, 2012, the City filed the instant Motion for Summary Judgment and a Memorandum in Support. On January 19, 2012, counsel for Plaintiff filed a Motion for Additional Time to Respond to Defendant's Rule 56 Motion for Summary Judgment, which the Court denied without prejudice on January 23, 2012. On February 10, 2012, counsel for Plaintiff filed a Motion for Reconsideration, which the Court granted on February 13, 2012, extending the deadline for Plaintiff's response brief to April 14, 2012.

On April 4, 2012, the Court held a telephonic conference to reset the trial date.

On April 17, 2012, Plaintiff's attorney, Lonnie M. Randolph, filed a Motion to Withdraw, which the Court granted on April 19, 2012. In the same Order, the Court gave Plaintiff notice of the pending Motion for Summary Judgment and of his obligation to respond to the Motion for Summary Judgment. The Court, on its own motion, extended the deadline for Plaintiff to respond to the Motion for Summary Judgment to May 30, 2012. On April 23, 2012, Defendant also sent Plaintiff a Notice of Summary Judgment Motion to Pro Se Litigant. As of the date of this Opinion and Order, Plaintiff has not filed a response to the Motion for Summary Judgment.

On June 15, 2012, Defendant filed a reply in support of its Motion for Summary Judgment, seeking a ruling from the Court.

2

On June 22, 2012, the Court sua sponte ordered Defendant to file a full copy of Plaintiff's deposition transcript with the Court, which Defendant did on June 25, 2012.

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Rule 56 further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)).  "[S]ummary judgment is appropriate – in fact, is mandated – where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotations omitted).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323; Fed. R. Civ. P. 56(c).  The moving party may discharge its initial responsibility by simply "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.  When the nonmoving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar

materials negating the opponent's claim. *Celotex*, 477 U.S. at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chi.*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party, if it chooses, may support its motion for summary judgment with affidavits or other materials, and, if the moving party has "produced sufficient evidence to support a conclusion that there are no genuine issues for trial," then the burden shifts to the nonmoving party to show that an issue of material fact exists. *Becker v. Tenenbaum-Hill Assoc.*, 914 F.2d 107, 110-111 (7th Cir. 1990) (citations omitted); *see also Hong v. Children's Mem'l Hosp.*, 993 F.2d 1257, 1261 (7th Cir. 1993).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. *See* Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e) provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e)(2), (3); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Thus, to demonstrate a genuine issue of fact, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," but must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor

of that party.  *See Anderson*, 477 U.S. at 255; *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009); *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995).  A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact.  *See Anderson*, 477 U.S. at 249-50.

## MATERIAL FACTS

Northern District of Indiana Local Rule 56-1 requires the moving party to file with the Court a "'Statement of Material Facts' that identifies the facts that the moving party contends are not genuinely disputed."  N.D. Ind. L.R. 56-1(a).  In response, the opposing party is obligated to file with the Court a "'Statement of Genuine Issues' that identifies the material facts that the party contends are genuinely disputed so as to make a trial necessary."  N.D. Ind. L.R. 56-1(b)(2).  "When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion." *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) (addressing the equivalent local rule for the United States District Court for the Northern District of Illinois) (citing *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003)); *see also Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994) (noting that the Seventh Circuit has routinely sustained "the entry of summary judgment when the non-movant has failed to submit a factual statement in the form called for by the pertinent rule and thereby conceded the movant's version of the facts").

In the present case, Defendant, as the moving party, has submitted a Statement of Undisputed Material Facts.  However, Plaintiff has not submitted a response brief, much less a Statement of Genuine Issues; therefore, the following facts asserted by Defendant and supported by admissible

evidence are considered to exist without controversy for the purposes of this Motion for Summary Judgment.

Plaintiff Mark Douglas worked as a paramedic for the City of Lake Station ("City") from August 1, 2005, through September 17, 2009.  The Lake Station Board of Public Works ("Board") is the department that oversees the paramedics, and the Emergency Medical Services ("EMS") Department provides paramedic services to businesses, local governments, and agencies thereof. Plaintiff's supervisor, Mary Littrell, considered him to be an excellent paramedic and a good employee in general because she felt that he was reliable and trustworthy.  Defendant does not dispute, for purposes of this motion, that Plaintiff satisfactorily performed his paramedic duties until September 12, 2009.

The City contracted with St. Mary's Medical Center ("SMMC") to provide paramedic services because State law required paramedics to operate under the license of a doctor, specifically, a sponsoring hospital.  On September 12, 2009, Plaintiff transported a patient to SMMC.  While Plaintiff was at SMMC, he was involved in an incident (not involving the patient), and he was soon after suspended and eventually terminated.  Sometime between the September 12, 2009 incident and September 17, 2009, Mary Littrell, Plaintiff's supervisor and the Director of the City's EMS Department, received separate calls from SMMC's Head of Security, Nurse Manager Paula Rousis, and EMS Manager Robert Boby regarding the September 12, 2009 incident.  Each described an encounter following the patient transport that occurred between Plaintiff and a security officer at SMMC, Steven Duran, in which Plaintiff approached Duran in the emergency room and started yelling for an unknown reason.

In response to the call from Rousis, Littrell requested that Rousis collect documentation from

the employees and subsequently received written statements from at least seven employees, including Duran, regarding the incident. The written statements provided that Plaintiff approached Duran and began yelling and that Duran responded in a calm voice, asking Plaintiff what was wrong. Some employees stated that they did not know exactly what Plaintiff said, while two employees wrote that Plaintiff made a threat of "rolling or rumbling outside" with another unidentified individual, giving the impression that he wanted to engage in a fight. Def. Br., Exh. F, p. 8, 11.

As a result, Littrell brought the incident to the attention of Lake Station Mayor Keith Soderquist ("the Mayor"). Littrell and the Mayor decided to suspend Plaintiff pending further investigation from the Board. The Mayor's main concern was maintaining the contract with SMMC and the impact that any further incidents would have on the relationship between the City and SMMC, specifically because the EMS Department could not function without the contract.

On September 17, 2009, Littrell summoned Plaintiff to her office and personally gave him a copy of the employees' statements, with the exception of the statement by Rousis, as well as a letter of suspension. In the letter, Littrell informed Plaintiff that she had received numerous complaints, including eight write-ups as well as calls from the Head of Security stating that Plaintiff yelled in the emergency room area and made a threat of "rock'n'rollin with a civilian who was in the emergency room." Def. Br., Ex. G. Littrell also wrote that patients' families were present when the incident occurred and that the staff was fearful for their safety around Plaintiff. Additionally, Littrell notified Plaintiff that the Board would discuss the situation at a Board meeting on September 29, 2009, and that he had the right to be present at the meeting. Last, Littrell advised Plaintiff that he was prohibited from entering ambulance grounds until the investigation was complete.

On September 29, 2009, Plaintiff went to the location of the Board meeting, but was

7

informed that there was not a Board meeting that day.  Plaintiff then received a letter advising him that a meeting would be held on October 6, 2009, and again, that he had the right to be present. Plaintiff attended the meeting; however, Plaintiff's employment was not discussed because Littrell, who was out on a call, was not present at the meeting.  Plaintiff testified that no one informed Plaintiff of the Board's reason for not addressing the issue that day.

At a subsequent Board meeting on October 20, 2009, Littrell recommended that the Board terminate Plaintiff's employment.  Littrell testified that later that day, she mailed a letter to Plaintiff at his home address, stating that there had been a meeting and that she noticed his absence.  In the letter, which the City has provided as Exhibit H, Littrell notified Plaintiff of an upcoming November 3, 2009 Board meeting at which the Board would deliver its final decision regarding the discipline to impose on Plaintiff.  Littrell concluded the letter by encouraging Plaintiff to attend the meeting. Plaintiff testified that he never received the October 20, 2009 letter and, as a result, did not attend the November 3, 2009 meeting.

On November 3, 2009, the three-member Board unanimously voted to accept Littrell's recommendation and terminate Plaintiff's employment.  Among the reasons for the termination expressed by the Mayor was a concern of liability in the future should a similar incident occur as well as a concern that SMMC would cancel its contract and sponsorship of the City's EMS Department if the City kept a "reckless" individual in its employ.  Def. Br., Exh. A, ¶ 15.

The City's personnel manual recommends progressive discipline.  However, an exception is made for incidents that warrant immediate termination, and the procedures for progressive discipline does "not prohibit immediate formal disciplinary action whenever the interest of the City requires such action."  The personnel manual enumerates several grounds for immediate termination,

including "verbal or physical assault by an employee on other City employees or citizens."  The personnel manual contains an express statement that it is not to be construed to form a contract and is a guideline and statement of general philosophy.

Between October 4, 2009, and November 3, 2009, Plaintiff did not contact Littrell regarding his employment status.

On October 29, 2009, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").  Sometime after November 3, 2009, the City received a Notice of Charge of Discrimination, which was dated November 5, 2009.  Upon receipt of the Notice, the matter was turned over to the City's attorney.

Littrell was involved in terminating the employment or recommending the termination of the employment of three paramedics and one EMT who were white.  None of those incidents involved any interaction between a paramedic or EMT and the public, nor did any of the reasons for those terminations involve a verbal assault upon a citizen.

Plaintiff testified that he has no evidence of any racial discrimination on the part of the members of the Board.  In his deposition, Plaintiff identified four white individuals who he believes were treated more favorably but also testified that he has no first-hand knowledge of the alleged incidents involving the other individuals.

## ANALYSIS

Local Rule 7-1(a) provides that "[t]he court may rule on a motion summarily if an opposing party does not file a response before the deadline."  N.D. Ind. L.R. 7-1(d)(4).  The trial court's interpretation and application of its Local Rules is subject to great deference.  *See Cichon v. Exelon Generation Co., LLC*, 401 F.3d 803, 809-10 (7th Cir. 2005); *Cuevas v. United States*, 317 F.3d 751,

752 (7th Cir. 2003); *Tenner v. Zurek*, 168 F.3d 328, 331 (7th Cir. 1999). In fact, a trial court has the authority to strictly enforce its local Rules, even if summary judgment results. *See Koszola v. Bd. of Educ.*, 385 F.3d 1104, 1109 (7th Cir. 2004); *Waldridge.*, 24 F.3d at 921-22 (upholding the trial court's strict enforcement of local rules on summary judgment).

As described above, Federal Rule of Civil Procedure 56(e) provides that "[i]f a party . . . fails to properly address another party's assertion of fact . . . , the court may . . . grant summary judgment if the motion and supporting materials–including the facts considered undisputed–show that the movant is entitled to it." Fed. R. Civ. P. 56(e). Thus, summary judgment is appropriate when the non-movant does not respond, and the "motion demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." *Johnson v. Gudmundsson*, 35 F.3d 1104, 1112 (7th Cir. 1994).

In the case at bar, Defendant argues that Plaintiff has failed to raise a genuine issue of material fact as to his Title VII claim and that the undisputed facts indicate that Defendant is entitled to judgment as a matter of law. Title VII of the Civil Rights Act of 1964 provides, in part, that it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To prove racial discrimination under Title VII, a plaintiff may proceed either under the direct method or the indirect method. *See Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012); *Rozskowiak v. Vill. of Arlington Heights*, 415 F.3d 608, 612 (7th Cir. 2005).

To survive summary judgment under the direct method, the plaintiff "must demonstrate a triable issue as to whether discrimination motivated the adverse employment action of which he

complains." *Davis v. Time Warner Cable of Se. Wis., LP*, 651 F.3d 664, 672 (7th Cir. 2011) (citing

*Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1114 (7th Cir. 2009)).  Direct evidence can take the

following forms: (1) an outright admission by the decisionmaker that the prohibited action was

undertaken, or (2) circumstantial evidence of a discriminatory reason by the employer.  *See Rogers

v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003).  The plaintiff can establish the latter through

a long chain of inferences, which has been described as "a convincing mosaic of circumstantial

evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Davis*,

651 F.3d at 672 (quoting *Silverman v. Bd. of Educ. of Chi.*, 637 F.3d 729, 734 (7th Cir. 2011)).

Circumstantial evidence typically falls into one of the following categories:

> (1) suspicious timing, ambiguous oral or written statements, or
> behavior toward or comments directed at other employees in the
> protected group; (2) evidence, whether or not rigorously statistical,
> that similarly situated employees outside the protected class received
> systematically better treatment; and (3) evidence that the employee
> was qualified for the job in question but was passed over in favor of
> a person outside the protected class and the employer's reason is a
> pretext for discrimination.

*Darchak v. City of Chi. Bd. of Educ.*, 580 F.3d 622, 631 (7th Cir. 2009) (quoting *Sun v. Bd. of

Trustees*, 473 F.3d 799, 812 (7th Cir. 2007)) (citing *Troupe v. May Dep't Stores, Inc.*, 20 F.3d 734,

736 (7th Cir. 1994)).

However, "'smoking gun' evidence of discriminatory intent is hard to come by." *Coleman*,

667 F.3d at 845 (citing *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716

(1983)).  Plaintiff has failed to allege, much less demonstrate, facts showing direct evidence of race

discrimination, and there is no such evidence in the record to support a claim that he was terminated

or often subject to disparate treatment because of his race.  As a result, Plaintiff must proceed under

the indirect, burden-shifting method established by the United States Supreme Court in *McDonnell*

11

*Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Under the indirect method, a plaintiff must first establish a prima facie case of discrimination by providing evidence indicating that: "(1) he is a member of [a] protected class; (2) he was performing well enough to meet his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees not in his protected class were treated more favorably." *Naik v. Boehringer Ingelheim Pharm., Inc.*, 627 F.3d 596, 599-600 (7th Cir. 2010) (citing *Hilderbrandt v. Ill. Dep't of Natural Res.*, 347 F.3d 1014, 1030 (7th Cir. 2003)). If the plaintiff meets his burden of establishing a prima facie case, a rebuttable presumption of discrimination arises, and the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the challenged action. *McDonnell*, 411 U.S. at 802; *see Burks v. Wisconsin Dept. of Transp.*, 464 F.3d 744, 751 (7th Cir. 2006). If the defendant provides a legitimate, nondiscriminatory reason for its actions, the burden shifts back to the plaintiff to offer evidence indicating that "the proffered reason is actually a pretext for illegal discrimination." *Grigsby v. LaHood*, 628 F.3d 354, 359 (7th Cir. 2010) (citing *Adelman-Reyes v. Saint Xavier Univ.*, 500 F.3d 662, 666 (7th Cir. 2007)).

In this case, Defendant does not challenge Plaintiff's ability to demonstrate that he is a member of a protected class, that he performed to employer expectations, or that he suffered an adverse employment action. Rather, the City denies that Plaintiff was treated less favorably than similarly situated employees not within his protected class.

"Whether two employees are 'similarly situated' is a common sense inquiry that depends on the employment context." *Filar v. Bd. of Educ. of Chi.*, 526 F.3d 1054, 1061 (7th Cir. 2008) (citing *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 618 (7th Cir. 2000)). "Where a plaintiff claims that

12

he was disciplined by his employer more harshly than a similarly situated employee based on some prohibited reason, a plaintiff must show that he is similarly situated with respect to performance, qualifications and conduct." *Snipes v. Ill. Dep't of Corr.*, 291 F.3d 460, 463 (7th Cir. 2002) (citing *Radue*, 219 F.3d at 617). "This normally entails a showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Radue*, 219 F.3d at 617-18 (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)). "All things being equal, if an employer takes an action against one employee in a protected class but not another outside that class, one can infer discrimination." *Filar*, 526 F.3d at 1061 (citing *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 405 (7th Cir. 2007)). The purpose of the similarly situated prong is simply to establish whether all things are in fact equal. *See id.*

In his deposition, Plaintiff identified four Caucasian employees who he felt were similarly situated to him but were treated more favorably than he was. Specifically, Plaintiff asserted that Ron Reed, Mary Littrell, John Kepshire, and Lisa Podenski each committed rule infractions similar to his, but were not terminated for doing so. In contrast, Defendant contends that none of the four employees was similarly situated to Plaintiff for purposes of Title VII. The Court agrees and finds that Plaintiff has not met his burden of proving that he was treated less favorably than similarly situated employees outside his protected class.

First, Plaintiff testified that Reed called off work frequently. However, Plaintiff did not know if Reed called off in the acceptable time frame or the reasons for Reed calling off work. Plaintiff emphasized that Reed was never terminated for the aforementioned infractions. Despite both Reed and Plaintiff having been paramedics under Littrell's supervision, Plaintiff and Reed were

13

not similarly situated for purposes of Title VII because there is a significant distinction regarding the rule infractions they committed or, in the case of Reed, may have committed. *See Burks*, 464 F.3d at 751 ("[T]he employee must show that the other coworker had a 'comparable set of failings'"). Littrell and the Board were under the impression that Plaintiff verbally assaulted Duran while in the course of employment, which is an act that the employment manual specifically identifies as warranting immediate termination. In contrast, Reed's frequent calling off of work, if that in fact constituted an infraction, is not listed in the manual as grounds for immediate termination. Plaintiff also testified that the medics informed Plaintiff that Reed had failed to respond to a call on one occasion because he fell asleep at the department; however, this is hearsay and, thus, inadmissible on summary judgment. Even if the evidence were admissible, missing a shift is also not listed as grounds for immediate termination. Therefore, Reed is not a similarly situated person for purposes of Title VII.

Second, Plaintiff identified Littrell, his supervisor, as a similarly situated individual because she failed to show up at a festival that Littrell and Plaintiff were scheduled to work together. However, Littrell was not similarly situated because she was the Director of the EMS Department at the time, and she was his supervisor. Furthermore, Plaintiff has provided no evidence indicating that Littrell's nonappearance at the festival was an infraction.

As for Podenski, Plaintiff testified that he did not witness any infractions involving Podenski, but that there was always "friction" between Podenski and Littrell. This assertion does not support Plaintiff's claim that he was treated less favorably than similarly situated employees not within his protected class.

Last, Plaintiff testified that, on one occasion, Kepshire agreed to stay at work after his shift

14

was over because his replacement did not show up but then he left during that subsequent shift because he had to go to work at his full time employment.  Plaintiff's knowledge of this alleged incident is based on hearsay and, thus, is not admissible.  Nevertheless, Kepshire and Plaintiff worked for different supervisors.  Whereas Plaintiff's supervisor made the decision to submit Plaintiff's case to the Board, there is no evidence that Kepshire's supervisor brought any incident involving Kepshire to the Board.  Because the two had different supervisors and Plaintiff has not provided evidence that the Board was the decision-maker in both scenarios, the Court cannot find that Plaintiff and Kepshire were similarly situated.  *See Coleman*, 667 F.3d at 847-848 (explaining that courts "generally require[] a plaintiff to demonstrate at a minimum that a comparator was treated more favorably by the same decision-maker who fired the plaintiff."); *Little v. Ill. Dep't of Revenue*, 369 F.3d 1007, 1012 (7th Cir. 2004) ("A similarly-situated employee must have been disciplined, or not, by the same decisionmaker who imposed an adverse employment action on the plaintiff.") (citing *Patton v. Indianapolis Pub. Sch. Bd.*, 276 F.3d 334, 338 (7th Cir. 2002); *Radue*, 219 F.3d at 617-18).

For the foregoing reasons, Plaintiff has failed to provide evidence demonstrating that he was treated less favorably than similarly situated employees outside of his protected class. Consequently, the Court finds that Plaintiff has not met his burden of establishing a prima facie case of discrimination under the indirect method and summary judgment in favor of Defendant is appropriate.

Even assuming that Plaintiff could make out a prima facie case of race discrimination, to avoid summary judgment, he would have to show by a preponderance of the evidence that Defendant's proffered reason for the adverse employment action is pretextual.  *See Grigsby*, 628

F.3d at 359 (citing *Adelman-Reyes*, 500 F.3d at 666). "Pretext is 'more than just faulty reasoning or mistaken judgment on the part of the employer; it is [a] lie, specifically a phony reason for some action.'" *Silverman*, 637 F.3d at 743-44 (quoting *Scruggs v. Garst Seed Co.*, 587 F.3d 832, 839 (7th Cir. 2009)). A plaintiff may establish pretext by showing one of the following: "(1) [d]efendant's explanation had no basis in fact, [] (2) the explanation was not the 'real' reason, or (3) at least the reason stated was insufficient to warrant the [action]." *Hughes v. Brown*, 20 F.3d 745, 747 (7th Cir. 1994) (citing *Lenoir v. Roll Coater, Inc.*, 13 F.3d 1130, 1133 (7th Cir. 1994)).

In the present case, Defendant provided a non-discriminatory reason for terminating Plaintiff without utilizing progressive discipline as recommended by the City's personnel manual. Although the manual calls for progressive discipline in most cases, the manual also makes several exceptions, allowing immediate termination of an employee who engages in a verbal assault. The Board made its decision after an investigation of the incident, basing its decision on written reports from several employees who described what could reasonably be considered a verbal assault or altercation between Plaintiff and a fellow employee. Although Plaintiff maintained in his deposition that he was not yelling during the incident at SMMC, his version of the events compared with those documented by the SMMC employees in their reports does not create a genuine issue of *material* fact. Regardless of whether the verbal assault actually occurred, the Board was reasonably under the impression that Plaintiff verbally assaulted someone when making its decision. *See Silverman*, 637 F.3d at 744 ("As we have noted with respect to pretext in the discrimination context, if the Board honestly believed the non-discriminatory reason it proffered, the reason was not pretextual."); *Tincher v. Wal-Mart Stores, Inc.*, 118 F.3d 1125, 1130 (7th Cir. 1997) ("The pretext inquiry focuses on the honesty-not the accuracy-of the employer's stated reason for the termination.").

Although Plaintiff testified that he did not receive notice of the November 3, 2009 meeting, the Board in good faith believed that he had received the October 20, 2012 letter notifying him of the November 3, 2009 meeting. Nor did the City "purposefully turn a deaf ear to him" or "fail to investigate the incident altogether." *Davis*, 651 F.3d at 674. Initially, Littrell immediately investigated the incident by asking Rousis to collect statements from the employees present at SMMC during the incident and by calling Plaintiff into her office to discuss the incident. In addition, Plaintiff was invited to attend the Board meetings at which his employment was to be discussed. Notably, the Board did not receive the Notice of Charge of Discrimination, which was dated November 5, 2009, until sometime after it made its decision to terminate Plaintiff's employment on November 3, 2009. Consequently, even if Plaintiff had made out a prima facie case of discrimination, Plaintiff could not meet his burden of establishing that the City's proffered reason for terminating him was a pretext for discrimination in violation of Title VII.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants'[sic] Motion for Summary Judgment and **DIRECTS** the Clerk of Court to enter judgment in favor of Defendant City of Lake Station and against Plaintiff Mark Douglas as to all claims in Plaintiff's Complaint.

The Court **VACATES** the September 14, 2012 final pretrial conference and the October 15, 2012 jury trial setting.

SO ORDERED this 3rd day of August, 2012.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:    All counsel of record, Plaintiff, *pro se*